IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, <br><br> and <br><br> CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND and HOWARD McDOUGALL, trustee, <br><br>          Plaintiffs, <br><br>          -vs- <br><br> ACTIVE TRANSPORTATION COMPANY, LLC, a Kentucky limited liability corporation, <br><br>          Defendant. | Case No. 08 C 228 <br><br> Honorable <br> District Judge Darrah |

**CENTRAL STATES' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

A large employer that contributes on average approximately $240,000 per month to Central States pays its October and November 2007 Health and Welfare contributions nearly four weeks late, pays its September 2007 Pension Fund contributions six weeks late and fails to pay its October or November Pension Fund contributions at all. The employer notifies Central States that the sole reason for these payment problems is that it is experiencing serious cash flow problems so it does not have the money to pay and it will need an extended payment arrangement (¶¶ 7, 8, 11 of George Aff., Ex. A to Central States' Opening Brief). However, as the January 15, 2008 due date for the December contribution payments totaling $285,000 approaches ($151,810 for the Pension Fund and

F:251885 / 08119323 / 2/4/08

-1-

$134,700 for the Health and Welfare Fund), the employer stops returning Central States' phone calls (¶¶ 10-11 of George Aff., Ex. A to Central States' Opening Brief). At this point, Central States files suit and serves its motion for a preliminary injunction. None of these facts established by Central States' Motion for Preliminary Injunction are disputed in Active's response.

It is only because of the preliminary injunction motion that Central States was finally able to get Active's attention and force it to move Central States to the list of Active's high priority creditors. At that point, Active finally reopened its communications with Central States. It promised to make the December payments, although it was not able to do so on the January 15, 2008 due date, so it makes the Health and Welfare Fund payment on January 22, 2008 and the Pension Fund payment of January 29, 2008.

It is clear from Active's response that it does not even understand the nature of the relief sought by Central States in its Motion. Active claims that Central States cannot have an injunction to compel payment of its past due balance of $173,000 plus interest and liquidated damages because it will be able to pay this debt in May 2008. But payment of the past due balance is not what Central States' Motion seeks – Central States seeks an injunction compelling Active to pay its monthly contributions as they come due while this case is pending (e.g., the contributions for January 2008 that are due on February 15, 2008, the contributions for February 2008 due March 15, 2008, etc). Thus, Central States opening brief concludes as follows:

> Because the failure of Active Transportation to pay fringe benefit contributions on a timely basis causes irreparable harm to the Plaintiffs, a preliminary injunction should be entered which orders Active Transportation to: (a) pay in full its December 2007 pension and health and welfare contributions with said payment to be received by the Pension Fund and the Health and Welfare Fund on or before January 15, 2008; and (b) pay in full

>all contributions owed to the Pension Fund and the Health and Welfare Fund for months subsequent to December 2007, to be received by the Pension Fund and the Health and Welfare Fund on or before the 15th day of the following month during the pendency of this case.

(p. 11 of Central States' opening brief). Central States is seeking an injunction requiring timely payment of ongoing contributions that are not yet past due, but will come due while this case is pending; Central States is not seeking an injunction requiring payment of the past due balance.

In its response, Active simply ignores *Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214 (7th Cir. 1989) and the cases from other judges in this district relied upon by Central States, which establish that Central States is entitled to an injunction where, as here, a participating employer is facing financial problems that have made it unable to pay its debts as they come due. However, these decisions establish that the requested injunction should be entered.

>A.   Active Does Not Challenge Central States' Showing With Respect To Three Of The Injunction Elements.

There is no disagreement between the parties on the legal standard for entry of an injunction. There is also no challenge from Active with respect to three of the relevant factors. First, not only does Active not contest Central States' showing of its likelihood of success on the merits, it admits it is subject to an obligation to contribute that it has not fully performed. Second, Active does not contend that the entry of an injunction will cause Active irreparable harm; indeed, Active could not make such an argument since Central States is only asking that Active be ordered to comply with its contractual and statutory

duty[1] to timely remit contributions to the Funds. Third, Active does not challenge Central States' showing that the public interest favors the entry of an injunction requiring a financially distressed employer to pay required contributions on time.

>   B.  Central States Has Shown Irreparable Harm And The Inadequacy Of A Legal Remedy Due To Active's Admittedly Poor Financial Condition.

Active's argument is narrowly focused on the irreparable harm and adequacy of the legal remedy factors. These factors are closely related in Central States' motion because Central States established that its remedy at law is inadequate since a money judgment may be uncollectible in light of Active's precarious financial condition. Central States also established that the risk of non-payment causes irreparable harm because Central States will be required to provide benefits to Active's employees even if Active never pays the corresponding contributions. Active does not dispute Central States' showing that it will continue to provide benefits even if Active never pays the corresponding contributions. However, Active asserts that Central States cannot show irreparable harm because even though Active is admittedly financially distressed at this time, it will rebound by May 2008 and will then pay Central States in full. There are several reasons why this argument is inadequate.

First, Active completely ignores the controlling decision in *Gould v. Lambert Excavating Co.*, 870 F.2d 1214 (7th Cir. 1989). In *Gould*, the Seventh Circuit held that

---

[1] The statutory duty is imposed by § 515 of ERISA which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

ERISA authorizes entry of an injunction to force an employer to make required monthly contribution payments to ERISA funds like Central States.  The court held that there must be a showing of irreparable harm, but the threshold is very low in light of the purposes of ERISA:

> [W]hether or not to issue an injunction [in an ERISA case] must be based on the traditional analysis ... which includes a finding that the movant is subject to irreparable harm.  In this connection, it should be noted that one of the expressed purposes of ERISA is to ensure the protection of millions of employees covered by pension plans: "Congress finds ... that the continued well-being and security of millions of employees and their dependents are directly affect by these plans;  that they are affected with a national public interest ..." 29 U.S.C. § 1001(a).  Accordingly, <u>the probability of irreparable harm is strong</u>, although the facts of each case may differ, and an injunction must be issued on a case-by-case basis.

870 F.2d at 1221 (emphasis added).  Central States has more than met this light burden by showing there is risk of non-payment based upon Active's admittedly fragile financial condition coupled with Central States' obligation to provide benefits regardless of whether Active pays.

Active's brief distorts the financial condition of the Pension Fund.  It is true the Pension Fund's IRS form 5500 return for 2006 indicates that the Pension Fund had $19 billion in assets, but same return also indicates that the Pension Fund had $33 billion in vested liabilities so the Pension Fund was less than 60% funded.  If Active does not pay, the Pension Fund vested liabilities will continue to increase, but its assets will not increase due to Active's non-payment.  In light of the Pension Fund's funding status, it is important every required dollar be promptly paid to the Pension Fund.

Second, Active overlooks the fact that the injunction factors do not have absolute weights.  "Instead, th[e] court uses a sliding scale approach under which 'the more likely the plaintiff is to success on the merits, the less the balance of irreparable harm needs to

weigh towards its side.'" *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999), quoting, *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir, 1992). In light of Active's admission of liability, it is not only likely, it is absolutely certain that Central States will succeed on the merits, so the showing that must be made on the irreparable harm factor is very slight. Again, Central States has more than met its burden on this element due to Active's admitted poor financial condition that has made it unable to pay its bills as they come due.

Third, Active has utterly failed to rebut Central States' showing that the potential for irreparable harm exists in light of Active's admitted financial problems and Central States' obligation to pay benefits regardless of whether it ever collects the corresponding contributions. Active argues that Central States' showing is undermined by the speculation in the affidavit of Active's CEO that "[M]y review of Active's Transportation's financials shows that Active Transportation will be in a position to pay all outstanding contributions to the Central States Funds in addition to any interest and liquidated damages by the end of May of 2008." (¶ 5 of Barlos' Aff., Ex. A to Active's Brief.) There are two reasons why this representation does not rebut Central States' showing. First, as indicated above, Active does not comprehend of the purpose of the injunction sought by Central States. Central States is not seeking an injunction requiring Active to pay the past due balance of $173,000 plus liquidated damages; the injunction it requests would prevent the indebtedness from growing while this case is pending. The order Central States has requested will require Active to pay its January contributions when they come due on February 15 and the contributions for the ensuing months 15 days after the close of the month. The CEO's affidavit offers no assurance at all that any of these payments will be made. If Active's liability continues to average $240,000 per month, Active's delinquency

will have swelled from $175,000 to over $1 million if the January, February, March and April payments (due February 15, March 15, April 15 and May 15) that would be compelled by the injunction are not made.

Second, The CEO's speculation about when Active will be able to pay is hardly reassuring. He represents that Active's problems have been caused by "the dramatic downturn in the domestic auto industry ... especially ... Fort Motor Company, one of Active Transportation's largest customers." The CEO then says that despite this problem, Active will be able to pay the Fund by May based upon his "review of Active Transportation's financials," but he does not elaborate at all on how this turnaround is possible. It appears that the CEO is operating under the unrealistic belief that the domestic auto industry will rebound before May of 2008. According to the *New York Times*, General Motors and Ford have both announced "sizeable cuts in their first quarter production" and "most forecasts [indicate 2008] will be the industry's worst year since 1998." <u>As Expected, Ford Falls From 2nd Place in U.S. Sales</u>. *New York Times, Business Section* 1/4/08. Certainly, the CEO's speculation does not rebut Central States' showing the irreparable harm factor.

Finally, Active's opposition to this Motion standing alone is sufficient to create grave doubt about Active's ability to pay. If it was really so clear it will pay the ongoing contributions, it would allow the injunction to be entered. Active's opposition to this Motion shows at a very minimum, that Active has doubts about its ability to fulfill its ongoing obligation to Central States.

C.     There Is No Dispute About The Amount Owed.

Active makes the erroneous assertion that injunctive relief should be denied because there is a dispute about the amount owed since Central States' Motion claimed

that $377,053.87 was owed to the Pension Fund and $135,291.39 was owed to the Health and Welfare Fund, while Active maintains that only $173,531.60 is past due to the Pension Fund and no contributions are currently past due to the Health and Welfare Fund. Again, Active misunderstands the relief sought by Central States – Central States seeks an injunction compelling the timely payment of Active's ongoing contributions, not payment of the past due balance. Therefore, any disagreement about the precise amount of the past due balance is irrelevant. All that matters with respect to this motion is that there have been recent delinquencies caused by admitted financial problems.

Moreover, there is no dispute about the amount owed. The reason Alvan's balances are now lower then when Central States' Motion was filed on January 14, 2008 is that the belated payments of the December contributions on January 22, 2008 and January 29, 2008 paid all or virtually all of the Health and Welfare Fund balance and reduced the Pension Fund balance to approximately $175,000. Central States agrees the delinquent contribution balance is currently approximately $175,000. In addition, Active recognizes that it also owes interest and liquidated damages on the delinquency (¶ 5 of Barlos' Aff., Ex. A to Active's Brief). ERISA and the trust agreements set liquidated damages at 20% of the delinquent contributions so Active currently has a delinquent balance of at least $210,000 ($175,000 + [.20 x $175,000] = $210,000.)[2] Further, Active's January 2008 contributions (estimated at over $200,000) are now due since that month has ended, although these contributions are not past due since payment is due on February 15, 2008.

---

[2] Liquidated damages of 20% are also owed on the contributions for December 2007 that have now been paid, because they were not paid on time. *Chicago District Council of Carpenters Pension Fund v. Industrial Erectors, Inc.*, 840 F.Supp. 1248, 1255 (N.D. Ill. 1993). Additional liquidated damages of nearly $60,000 are due on the December 2007 contributions.

-9-

Thus, the already accrued debt currently owed by Active is the $210,000 delinquent balance plus the over $200,000 owed for January that is not yet past due.

## CONCLUSION

The preliminary injunction requested by Central States should be entered.

Respectfully submitted,

/s/ Albert M. Madden
Albert M. Madden
Attorney for Plaintiffs Central States,
Southeast and Southwest Areas Health and
Welfare and Pension Funds
9377 West Higgins Road
Rosemont, Illinois  60018-4938
847/518-9800, Ext. 3478

February 4, 2008          ARDC #03127399

## CERTIFICATE OF SERVICE

I, Albert M. Madden, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, and the Central States, Southeast and Southwest Areas Health and Welfare Fund certify that on February 4, 2008, I caused the foregoing Central States' Reply Memorandum in Support of Motion for Preliminary Injunction to be filed electronically. This filing was served on all parties indicated on the electronic filing receipt via the Court's electronic filing system.

      /s/ Albert M. Madden
      Albert M. Madden
      One of Central States' Attorneys